TEXAS EMPLOYERS' INSURANCE ASSO-
CIATION, Appellant,

v.

Mealle HICKS et al., Appellees.

No. 3082.

Court of Civil Appeals of Texas.

Eastland.

May 7, 1954.

Rehearing Denied June 4, 1954.

McMahon, Springer, Smart & Walter, Abilene, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellees.

LONG, Justice.

This is a Workmen's Compensation case. Mrs. Mealie Hicks, widow of Arthur R. Hicks, deceased, Ima Jean Hicks and Willie D. Hicks, children of the deceased, filed a claim for compensation with the Industrial Accident Board asserting that the said Arthur R. Hicks had sustained a fatal injury in the course of his employment with Texas Mill & Elevator Company. The Board awarded compensation to Mrs. Hicks and Ima Jean Hicks but denied the claim of Willie D. Hicks. Texas Employers' Insurance Association gave notice of appeal and filed this suit seeking to set aside the award. Mrs. Hicks and Ima Jean Hicks answered and sought judgment against the insurance company for death benefits under the compensation statutes. On a trial the jury found that (a) Arthur H. Hicks sustained a personal injury; (b) such injury was sustained by Arthur R. Hicks in the course of his employment; (c) such injury was the producing cause of Arthur R. Hicks' death and (d) the death of Arthur R. Hicks was not due solely to disease. Based upon the findings of the jury, the court entered judgment for Mealie Hicks and Ima Jean Hicks against Texas Employers' Insurance Association. From this judgment the insurance company has appealed.

By its first point, appellant urges the trial court erred in overruling and not sustaining its objections to certain testimony of the witness Mealie Hicks. The evidence discloses that Arthur R. Hicks, on August 13, 1953, and for approximately twenty-seven years prior thereto, had been employed by the Texas Mill & Elevator Company in Abilene. There was evidence that on said date, while working for said company, Arthur R. Hicks sustained a personal injury while lifting some sacks of feed as a result of which he died. Plaintiff offered to prove by Mrs. Hicks that her husband told her when he reached home on the day he was injured how he sustained said injury. At the time plaintiff offered the evidence, counsel for appellant asked the court to retire the jury and asked and obtained permission of the court to examine the witness on her voir dire for the purpose of making an objection to the evidence.

Counsel for appellant did examine the witness in the absence of the jury concerning the statement made to her by her husband with reference to how he got hurt. He made an effort to have the witness fix the date when said statement was made. In order to get the record fairly stated, we quote the following from the Statement of Facts:

"(Whereupon in the absence of and out of the presence and hearing of the jury, the following proceedings occurred)

"Cross Examination by Mr. Mahon:

"Q. Mrs. Hicks, I had in mind, when I asked the Court to excuse the jury that counsel was getting ready in the next question or two or somewhere down the line, to ask you to detail what Mr. Hicks might have said to you about getting hurt while working and it is in regard to that that I want to question you in the absence of the jury. Now, he did tell you on one occasion that he did get hurt? A. Yes, sir.

"Q. You remember what day that was? A. Well, it was round the thirteenth, as well as I remember.

"Q. Around the thirteenth? A. Yes, sir.

"Q. He worked until the twenty-second of August, didn't he? A. Well—twenty-second? Well, he worked three or four days. Well, I just can't remember just the exact time.

"Q. You heard the Mill superintendent testify that he worked until the twenty-second of August? A. Yes, I heard that. At that time, I just don't remember.

"Q. You are alleging here that this accident occurred on or about the thirteenth day of August? A. Yes.

"Q. So, that he either worked eight or nine days after he was supposed to have been hurt, is that correct? A. Well, I just can't remember that right time.

"Q. Now, in your deposition you testified that he told you this two or three days before Doctor Strole was called to look after him? A. Well, he went to Doctor Strole's office.

"Q. He had Doctor Lonnie Hollis for his family physician? A. Well, we had used him but he called him up the last day and he wasn't in.

"Q. But you do recall that it was two or three days before he went to Doctor Strole that he told you about getting hurt? A. Well, as well as I remember it was.

"Q. That's the first time he told you about it? A. Yes, sir.

"Q. Now, do you know what date he went to Doctor Strole? A. No, sir, I don't remember.

"Q. Did Doctor Strole immediately take him to the hospital? A. No, sir.

"Q. What did he do, put him to bed at home? A. Well, he come back home and he said that—I asked him when he came back what he said was the matter with him and he said he didn't tell him. He said, he said come back and he would take some x-rays— he went to him on Friday.

"Q. Went to him on a Friday? A. Yes, and he told him to come back a Tuesday and he would take some x-rays.

"Q. All right. A. And so he didn't give him any medicine. I asked him if he give him any medicine and he said 'No.'

"Q. All right, Mrs. Hicks, Doctor Strole's report is to the effect that Mr. Hicks first saw him on August 22, 1952; if August 22, 1952, is correct; assuming Doctor Strole is correct about that, and I presume he has a record that will show it, if that is correct, then he told you this two or three days before August 22? A. Well, I just can't remember those dates.

"Q. Well, it was two or three days before he first went to Doctor Strole, is that correct? A. Yes, sir. As well as I remember, that's right.

"Q. And whatever date it happens to develop that he did go to Doctor Strole, it was two or three days before that that he told you he had been hurt? A. No, he told me he was hurt the evening he come in.

"Q. Well, now, in your testimony Mrs. Hicks, that you gave on your deposition you stated—I can't find it.

"The Court: That would be cross examination anyway, before the jury wouldn't it?

"Mr. McMahon: If it please the Court, the point I am making is that— my objection might go to the weight rather than the admissibility.

"The Court: I think it would. If it was like you said there it would be.

"Mr. McMahon: If he told her two or three days before he saw Doctor

Strole it wouldn't be res gestae; it would be too remote.

"The Court: I am just going by what she said there.

"Mr. McMahon: I was trying to find the point in the deposition where she testified it was two or three days before.

"The Court: That would be a subject for cross examination.

"Mr. McMahon: All right. Go ahead.

"The Court: Bring the jury in."

Whereupon the jury was returned to the jury box and under the direction of counsel for appellee, the witness testified as follows:

"Q. Mrs. Hicks, on August 13, 1953 did your husband come home for lunch? A. No, sir.

"Q. About what time of day was it then that he did come home? A. It was around five.

"Q. At the time he got home did you look at him and see that there was something wrong with him? A. Well, he wasn't there but a short time until he told me.

"Q. And what, if anything, did he tell you? A. Well, he told me that he hurt himself; he felt something—

"Q. At the time— A. —something sting and kind of pull loose in his side.

"Q. When did he tell you that this had happened, the tearing and the stinging in his side; what was he doing? A. Well, as well as I remember he said he was lifting sacks but I don't remember just how he told me, because—

"Q. What was the condition of your husband's stomach at that time? A. It was swollen and he told me that he had been craving water all day. He couldn't get enough and I reckon

he had drank—he would drink a glass of ice water and then he would turn right around and drink another glass.

"Q. That was after he got home? A. Yes. He didn't eat too much supper. He just craved water.

"Q. Now, what had been the condition of your husband's health up to that time? A. Well, he had never had anything but just little cases of flu."

At the conclusion of the direct examination of Mrs. Hicks by counsel for appellee, counsel for appellant cross examined the witness as follows:

"Q. (by Mr. McMahon) Is it your recollection that Mr. Hicks made this statement to you two or three days before he went to see Doctor Strole? A. Yes, sir. I am pretty sure it was."

The witness was then excused and counsel for appellee advised the court that he had one other witness to offer before he rested his case. Thereupon, counsel for appellant made the following objection and motion:

"Mr. McMahon: At this point—I was going to do it before you excluded the jury, in view of the testimony of the witness, as to when this statement was made to her by her husband, I want to object to all of her testimony along that line and move to strike on the ground that it is no part of the res gestae.

"The Court: All right, overruled.

"Mr. McMahon: Note our exception."

■ Appellant urges as a ground for reversal that the evidence admitted was not part of the res gestae and was not admissible for the reason that the deceased was injured at about 3:30 P.M. on August 13, 1952, and arrived home about 5:00 P.M. on the same day and was at home a short time before he made the statements about which complaint is here made; that over an hour and a half had elapsed between the

time of the alleged injury and the time the statements were made to his wife at their home. Appellant further says that the evidence was not admissible because the record does not affirmatively reflect that Arthur R. Hicks was in a state of emotional stress or agitation at that time so as to bring the evidence within and make it admissible under the res gestae rule.

We have carefully examined the record and believe that the objection made by appellant in the trial court was not broad enough to cover the matters urged here to bring about a reversal of the case. In the trial court it was the theory of appellant that Mrs. Hicks testified in her deposition and upon the trial of the case that the statement was made to her by her husband two or three days before he went to consult Dr. Strole and that the statement was not made on the date of the alleged injury. As we construe the record, the motion to strike was predicated upon the theory that the statement was not made on the date of the alleged injury. At the time the witness was being examined on her voir dire, in the absence of the jury, counsel made the following statement to the court: "If he told her two or three days before he saw Doctor Strole it wouldn't be res gestae; it would be too remote." Then, after the witness had testified and been excused as a witness, counsel made the following statement: "In view of the testimony of the witness *as to when this statement was made to her by her husband* I want to object to all of her testimony along that line and move to strike on the ground that it is no part of the res gestae." (Italics ours).

■ Assuming, without deciding, that the evidence offered was not part of the res gestae, we are compelled to hold that there was no error in overruling the motion to strike. It is true that appellant would probably have been entitled to a charge directing the jury not to consider the evidence if it found that the statement was not made to Mrs. Hicks on the date of the alleged injury but the question as to when the statement was made was for the jury because the evidence on that issue was not conclusive. Furthermore, we believe the motion to strike came too late. Mrs. Hicks had testified by deposition and counsel for appellant had examined her on her voir dire in the absence of the jury prior to the time she testified as to the statements made by her husband. He also cross examined her in the presence of the jury. When the evidence was offered and at the time it was given, appellant did not object. There is no excuse given and we can find none for the failure of counsel to object at that time. Consequently, we find no error in the admission of the testimony. Hix v. Wirt, Tex.Civ.App., 220 S.W.2d 530; Frye v. Wayland, Tex.Civ. App., 228 S.W. 975; Knights of Maccabees of the World v. Johnson, Tex.Civ.App., 143 S.W. 718.

■ Appellant, in its motion for a new trial, alleged the following ground:

"Because there was an improperly established tribunal for the trial of the above entitled and numbered cause in that while the plaintiffs' counsel was interrogating the jury that had been summoned to try said case on their voir dire examination two members of the jury panel failed to make a full disclosure of their qualifications as shown by the affidavit hereto attached and marked Exhibit A and made a part hereof for all purposes."

A hearing was had on the motion for new trial and appellant sought to show that while the jury was being examined on voir dire each of the jurors was asked by counsel for appellant whether he had ever had a claim for workmen's compensation. Appellant further sought to show that two jurors answered such questions in the negative, when, in truth and in fact, each of them had had compensation claims.

Without going into detail, we are required to hold that the evidence was conflicting and is sufficient to support the implied finding of the trial court that the misconduct of the jurors alleged did not occur. Therefore, appellant's point No. 2 is

overruled. City of San Antonio v. McKenzie Const. Co., 136 Tex. 315, 150 S.W. 2d 989.

The judgment of the trial court is affirmed.