The STATE of Texas, Appellant,

v.

F. P. BLANCHARD et al., Appellees.

No. 14333.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 27, 1965.

Rehearing Denied Feb. 24, 1965.

Highway No. 10, or Fredericksburg Road, and lying in a northwesterly direction from the City of San Antonio, Bexar County, Texas. Prior to the taking, defendant Blanchard owned, subject to the claims of certain taxing authorities, a total of 2.206 acres of land which had been previously subdivided into three parcels. After the taking there remained .481 acres.

Interstate Highway 10 is to be a controlled access highway with roads to be built as a part of such highway, whereby the right of ingress and egress to and from defendant's remaining property abutting on said highway is not to be denied.

The trial was to a jury and resulted in judgment in favor of Blanchard and the other defendants in the total sum of $9,500.-00, $3,450.00 of which had previously been paid into court, leaving a balance due of $6,050.00, from which judgment the State of Texas has prosecuted this appeal.

During the trial Blanchard placed upon the witness stand three expert value witnesses, namely, Edward J. Orr, John C. Gaston, and Frank M. Drane. As a comparable sale, in arriving at the value of the subject land, these three witnesses used the sale of some land across the highway, some 300 yards to the north, by James M. Blake and wife, Betty, to George W. Delavan. Appellant contends that the court erred in admitting evidence of this sale and not sustaining its motion to strike for the following reasons, to-wit: (1) Such testimony was based in part on an improved comparable sale, while the property being valued by the jury was unimproved, and (2) part of the consideration in such transaction was another property given in trade.

The record shows that after the witness Orr had testified to his qualifications as an expert value witness, his knowledge of land values in the neighborhood where the Blanchard land is located, his inspection of the subject land for the purpose of determining its market value on September 17, 1963, the date on which the property was

Waggoner Carr, Atty. Gen., T. B. Wright, F. William Colburn, Asst. Attys. Gen., Austin, for appellant.

Davis, O'Connor, Pullen & Sugerman, San Antonio, for appellees.

MURRAY, Chief Justice.

This is a condemnation action brought under Art. 3264 et seq., Vernon's Ann.Civ. Stats. The State instituted this proceeding against F. P. Blanchard and others to condemn their right, title and interest in and to 1.725 acres of land fronting on what is called U. ·S. Highway 87, International

taken by the State, he was permitted, without objection, to give his opinion of the value of the land as follows: The value of all the land before the taking was $17,250.00; the value of the 1.725 acres taken, considered as severed land, was $16,500.00; the value of the remaining land before the taking was $750.00, and after the taking $2,500.00.

After the above testimony was admitted without objection the following occurred: (Questions were by Robert B. O'Connor, Esq., counsel for appellee, and F. William Colburn, Esq., counsel for appellant).

"Q. Now, Mr. Orr, would you please relate the factual basis upon which you used to establish the value that you just testified to?

"A. Yes, I will. One tract sold for $62.00 a front foot—

"MR. COLBURN: Your Honor, may I ask that the witness be instructed to give all of the background information, the grantor, grantee, date of sale— before we get to the sales price, so that we may determine the comparability of it before we get to the sales price?

"THE COURT: I think that is a proper request.

"MR. O'CONNOR: That is all right.

"A. Well the first tract of land which sold— which was bought by Mr. George W. Delavan fronting 215— 225 feet effective frontage on Fredericksburg Road in 1958, with— he had a cost of $14,000.00 or $62.00 a front foot.

"MR. COLBURN: Your Honor, may I ask the witness some questions about this particular sale on voir dire, please?

"THE COURT: Yes, sir.

"QUESTIONS BY MR. COLBURN:

"Q. Mr. Orr, as any good appraiser would, I assume you investigated this sale thoroughly before you used it as a portion of the basis of arriving at your opinion?

"A. Yes, sir. I did.

"Q. All right, sir. I believe— I don't know whether you gave the parties to that sale or not, but it was James M. Blake and wife, Betty, to George Delavan?

"A. That is correct.

"Q. On August 26, 1958?

"A. That is also correct.

"Q. And the deed is recorded in volume 4191 at page 481?

"A. I assume that is correct. I have the volume and page.

"Q. All right, sir. Now, at the time that property was sold it had a filling station, some living quarters and some other house behind it; did it not?

"A. It had the— All of the improvements of value were sold off the following year, and the improvements of no value were torn down and left nothing but the vacant tract. He sold off the improvements of value for $11,000.00; it cost him twenty-five, and he had a basis of $14,000.00.

"Q. All right, sir. Without reference to the cost again, let's make sure it is properly a matter for the Jury to consider.

"A. Okay.

"Q. I'm going to hand you what has been marked as Defendant's Exhibit No. 17 and ask you if, as a matter of fact, that house was not located on the property at the time of the sale?

"A. This was part— this house and 90 foot frontage was included in the sale.

"Q. Ninety foot frontage on Hausman Road?

"A. That is correct.

"Q. And that house subsequently resold from Mr. Delavan to Mr.—

"A. Higgindorth.

"Q. —Higgindorth. So, that you wouldn't say that that improvement had no value?

"A. No. This improvement had value, but it was sold at its market value, period.

"Q. All right, sir. Then, did you also find in your investigation into this property that a trade was part of the basis for that?

"A. I didn't know the full details. There was a trade of a lot.

"Q. The next deed after this one that you talked about—from Blake to Delavan—indicates a trade. Mr. Delavan deeded a lot in Dell Oak Park to Mr. Blake; is that correct?

"A. That is correct.

"Q. All right, sir. Now,— So, then you would say that in this transaction *you are telling the jury about,* there was a trade involved plus the fact that this house was on the property? (Emphasis added.)

"A. Yes, sir. That is correct.

"MR. COLBURN: Your Honor, at this time we will object to the admission of that sale and ask that it be stricken and the Jury instructed not to consider any testimony with regard to it. The sale was obviously improved; there was a resale of a portion of it with an improvement still on it, a picture of which Defendant has introduced in evidence, plus the fact that a trade was part of the consideration, and we don't feel it is proper in this suit where we are attempting to arrive at the value of the vacant property."

This was followed by considerable discussion by counsel in the presence of the court. Mr. O'Connor contended that inasmuch as the house and lot on the rear of the property had been sold by Delavan for $11,000.00, and the filling station and living quarters demolished and carried away as worthless, the sale was reduced to a sale of the vacant lot for $14,000.00, the original total consideration being $25,000.00. Mr. Colburn pointed out that a part of the total consideration was a lot conveyed by Delavan to Blake, and its true market value was not shown; that the filling station and living quarters, which were demolished, were not shown to be worthless, therefore it was not established that Delavan paid $62.00 per front foot for the corner lot.

The trial court overruled the objection and motion to strike with the following comment: "I think the Court is going to go ahead and let it in. I believe your objection goes to the weight with the explanation that has been stated."

O'Connor as counsel for Blanchard asked no further questions of Orr as to the Blake-Delavan sale, and Orr gave no further testimony as to that sale.

█ A serious question is here presented as to whether a timely objection was made, and as to whether appellant is in a position to complain when it is the one who developed the testimony before the jury. In 3 Tex.Jur.2d, p. 392, § 122, the following statement is made:

"An objection to the admission of evidence must be timely made, that is, it must be made when the evidence is offered, not after it has been received. The practice of permitting an improper question to be answered before objection is neither proper nor fair. If questions asked a witness are so framed as to apprise counsel of the nature of the answer attempted to be elicited, an ob-

jection comes too late when not made until the witness has fully testified. But if the incompetency does not appear until after testimony has been given, the proper practice is to move to have the evidence excluded so that the point may be preserved for appeal."

When Orr was asked to state the factual basis upon which he established the value he had testified to, he gave the following answer: "Yes, I will. One tract sold for $62.00 a front foot." This answer was clearly improper as an attempt to show what another parcel of land sold for, without giving any of the facts concerning the parties, the land, or the terms of the sale, and no doubt the answer would have been stricken upon proper objection or motion at the time, but appellant's counsel made no objection, he merely asked "that the witness be instructed to give all of the background information, the grantor, grantee, date of sale— before we get to the sales price, so that we may determine the comparability of it before we get to the sales price." The court stated, "I think that is a proper request". Orr then testified as follows:

"Well, the first tract of land which sold—which was bought by Mr. George W. Delavan fronting 215— 225 feet effective frontage on Fredericksburg Road in 1958, with— he had a cost of $14,000.00 or $62.00 a front foot."

Counsel for appellant again did not object to this testimony or ask that it be stricken, he only asked leave to question the witness on voir dire, and then proceeded, in the presence of the jury, to question Orr as to all the details of the Blake to Delavan sale. It is clear that he realized he was developing these facts before the jury, as in one place he stated: "So, then you would say that in this transaction, you are telling the jury about, there was a trade involved * * *?" After appellant's counsel had developed all of the

facts above stated, he made the following statement to the court:

"Your Honor, at this time we will object to the admission of that sale and ask that it be stricken and the Jury instructed not to consider any testimony with regard to it. The sale was obviously improved; there was a resale of a portion of it with an improvement still on it, a picture of which Defendant has introduced in evidence, plus the fact that a trade was part of the consideration, and we don't feel it is proper in this suit where we are attempting to arrive at the value of the vacant property."

The court overruled the objection and request, and nothing further was offered by Orr on the Blake to Delavan sale. Orr did testify as to other alleged comparable sales.

It occurs to us that counsel for appellant did not timely object to the evidence, and he developed before the jury practically all the evidence of which he now complains. Appellant is not now in a position to complain because the jury heard this evidence when it was produced before the jury in answer to questions propounded to Orr by appellant's own counsel. Hubbard v. Harris County Flood Control Dist., Tex. Civ.App., 286 S.W.2d 285; 3 Tex.Jur.2d, p. 390, § 121 et seq.

■ However, if we be mistaken in this conclusion then the error, if any, in overruling the objection and request was waived when appellant introduced substantially the same evidence by the witness Drane. Drane did not mentioned the Blake to Delavan sale in his direct testimony, but after counsel for appellees had completed his direct examination of the witness Drane, counsel for appellant took Drane, upon regular cross-examination, and again fully developed the same evidence relating to the Blake-Delavan sale which he is now objecting to and claiming that its introduc-

tion before the jury was reversible error. Even after he had finished with testimony by Drane he did not ask that it be stricken and removed from the consideration of the jury. It was only after appellees had rested, and after appellant had placed three value witnesses of its own upon the witness stand, and they had fully testified, and after both sides had rested and the witnesses had been excused, did it file a motion to strike the testimony of Orr, Gaston and Drane. Such motion clearly came too late. After developing the testimony from Drane, appellant waived any objection it might have had to such testimony. Medina Electric Cooperative, Inc. v. Ball, Tex.Civ.App., 368 S.W.2d 227; Hubbard v. Harris County Flood Control Dist., supra; 3 Tex.Jur.2d, p. 390, § 121 et seq.

■ By Points Nos. Nine, Ten, Eleven, Twelve, Thirteen and Fourteen, appellant assigns as error the court's action in overruling and not sustaining its objection to the introduction of testimony based in part upon the comparable sales from (1) Anderson to Ploch, (2) Anderson to Nabers, (3) Anderson to Nabers (a second sale), (4) Bertetti and Cassidy to Pipe Investment Company, because such sales were of property fronting on the completed portion of the same highway for which appellees' property is being taken, and reflected enhancement in value flowing from the construction of such highway to such adjoining property.

All of the above testimony was admitted without objection or motion to strike at the time it was introduced in evidence, and some of the testimony was solicited by counsel for appellant during his cross-examination. As heretofore stated, appellant waited until appellees had rested their case, then after it had placed three value witnesses on the stand and had them fully testify, and after both sides had rested and the witnesses had been excused, it made the following motion:

## "MOTION TO STRIKE TESTIMONY

"MR. COLBURN: Comes now the State of Texas and moves to strike from the record and remove from the consideration of the Jury the sales from Anderson to Ploch Oil Company, from Anderson to Nabers, from Bertetti to Humble Oil and Refining Company and from Bertetti to Pipe Investment Company on the grounds that the undisputed evidence discloses that all those sales, or each of those sales, front on the highway for which Mr. Blanchard's property is being taken and would therefore reflect whatever influence the highway might have had on the property after it was established. Respectfully submitted."

This motion, as well as the one first discussed, came too late and the trial court did not err in overruling it. Rule 373, Texas Rules of Civil Procedure; Nalle v. Gates, 20 Tex. 315; Robson v. Watts' Heirs, 11 Tex. 764; Pelphrey v. Diver, Tex.Civ.App., 348 S.W.2d 453; Kelso v. Wheeler, Tex.Civ.App., 310 S.W.2d 148; Hubbard v. Harris County Flood Control Dist., supra; Texas Emp. Ins. Ass'n v. Hicks, Tex.Civ.App., 271 S.W.2d 460; Halsey v. Humble Oil & Ref. Co., Tex.Civ.App., 66 S.W.2d 1082; 3 Tex.Jur.2d p. 390, § 121 et seq.

In view of the disposition we have made of the above assignments of error, appellant's remaining assignments are without merit and are overruled.

The judgment is affirmed.