# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 13, 2010 Session

## THOMAS E. MOORHEAD ET AL. v. JOY VAIL ALLMAN ET AL.

### Appeal from the Chancery Court for Bedford County
### No. 25,255    J. B. Cox, Chancellor

### No. M2009-01822-COA-R3-CV - Filed February 24, 2011

The sellers of a mobile home park appeal the trial court's decision to rescind two real estate sales contracts and refund the purchasers their down payment. The purchasers asserted claims for fraudulent misrepresentation, fraud in the inducement, and breach of fiduciary duty, all of which arose from alleged misrepresentations by the sellers regarding the condition and income potential of the property at issue. Following a lengthy and convoluted procedural history, including a jury trial, the granting of a new trial, and several waves of amended pleadings, the parties filed competing motions for summary judgment. The sellers asserted various defenses including, *inter alia*, that the purchasers' claims were time barred. Finding that the sellers fraudulently induced the purchasers into buying the property, and that the statute of limitations had been tolled due to the sellers' concealment of material facts, the trial court denied the sellers' motion, granted summary judgment to the purchasers. For relief, the trial court rescinded the sales contracts and awarded the purchasers a refund of their down payments. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

John H. Norton, III, and Liberti A. Snider, Shelbyville, Tennessee, for the appellants, Joy Vail Allman and Larry Allman.

Terry A. Fann, Murfreesboro, Tennessee, for the appellees, Clyde D. Manis, and Gregory D. Johns.

# OPINION

On January 28, 1997, appellees Clyde D. Manis and Gregory D. Johns ("Manis & Johns"), entered into a contract with appellants Joy Vail Allman and Larry Allman ("the Allmans") to purchase 40.3 acres, which included a mobile home park on Highway 231 in Bedford County, Tennessee. At the time of the sale, the Allmans had owned the mobile home park, known as Willow Tree Farm, for eight years. The purchase price for the land and mobile home park was $751,500.00, of which the buyers were to make a specified cash down payment at closing with the balance to be financed by the sellers at 8% for 20 years. On February 6, 1997, Manis and Johns entered into a second contract with the Allmans to purchase an adjoining tract of 38 acres, which included three additional trailers, a store building, a block building, and a small trailer, for a purchase price of $190,000.00. For this second tract, the buyers were to make an additional down payment at closing with the balance to be financed by the sellers at 7% interest for 20 years.

The closing for the sale of both properties occurred on March 1, 1997, at which time Manis & Johns made a cash down payment of $147,275.00 and executed promissory notes and deeds of trust in favor of the Allmans for the balance of the purchase price on the two tracts.

Manis & Johns operated the mobile home park for eight months, from March 1997 until November 1997. In November of 1997, due to various difficulties with the business, the parties agreed that the Allmans would resume the responsibility for the daily operation of the mobile home park until Manis & Johns could sell the business and real estate. Thus, the Allmans resumed the duties of performing maintenance and dealing with current tenants as well as showing homes to prospective tenants and signing new leases. They also assisted Manis & Johns in finding a buyer.

In early 1998, Thomas E. and Robert S. Moorhead ("the Moorheads") expressed an interested in purchasing the mobile home park. In March, Robert Moorhead visited the property and walked through several of the rental units with Ms. Allman. Ms. Allman informed Mr. Moorhead that the property was well-maintained, and that the units were in good working order and occupied by good tenants. Ms. Allman also provided the Moorheads with a statement estimating $7,000.00 in annual maintenance costs and $120,000.00 in annual income.

On April 8, 1998, the Moorheads purchased the mobile home park and the 40-acre tract (but not the 38-acre tract) from Manis & Johns for $775,000.00. The Moorheads made a $100,000.00 cash payment on the property at the closing. Although Manis & Johns were the sellers of the property and were in attendance at the closing, Ms. Allman retained the

funds paid at closing. By separate agreement between Manis & Johns and the Allmans, Manis & Johns also quitclaimed the 38-acre tract back to the Allmans for no consideration other than forgiveness of the balance of the debt Manis & Johns purportedly owed the Allmans on the promissory notes. Although the $100,000.00 down payment from the Moorheads was to be paid to Manis & Johns, Ms. Allman retained all but $15,000.00, claiming that Manis & Johns owed the balance to them for various expenses.[1]

The Moorheads managed the mobile home park themselves and soon faced substantial financial and maintenance problems with the mobile home park similar to those experienced by Manis & Johns. Within a month of running the park, the water pipes in many of the mobile homes began to break. After about six months, the Moorheads had to repair or replace water pipes in all 16 units. In total, they documented more than fifty water line breaks. In many of the units, the leaks caused extensive damage to the floors and walls.

On August 1, 2000, the Moorheads filed suit, naming the Allmans and Manis & Johns as defendants. They sought rescission of their contract to purchase the mobile home park and 40-acre tract and a refund of their $100,000.00 down payment. They alleged, *inter alia*, material misrepresentations by Joy Allman in the inducement of the contract as to the quality and profitability of the mobile home park and violations of the Tennessee Consumer Protection Act. Manis & Johns were named as defendants based on their privity with the Moorheads in the chain of title. The Moorheads asserted no additional substantive claims against Manis & Johns.

The case was set to be tried starting May 1, 2002. Two weeks prior to trial, on April 16, 2002, Manis & Johns filed a cross-claim against the Allmans also seeking rescission of their contracts with the Allmans and a refund of their down payments. However, upon motion by the Allmans to strike, the trial court dismissed the cross-claim on the ground it would work an undue hardship on the Allmans because it was filed too close to the date of trial. The interlocutory order, which was entered on May 3, 2002, stated that the dismissal was "with prejudice." Manis & Johns filed a notice of appeal of the order of dismissal on June 7, 2002.

The case was tried by a jury on May 1-2, 2002. At the conclusion of the trial, the jury found the Allmans made material misrepresentations to the Moorheads to induce them into purchasing the mobile home park and property. The jury also found that all of the contracts should be rescinded, and awarded a judgment of $60,000 in favor of the Moorheads against the Allmans. The Chancellor entered the judgment on May 10, 2002.

---

[1]Circumstances pertaining to the $100,000.00 will be discussed in more detail later in this opinion.

Shortly thereafter, the Allmans filed a motion for a new trial on various grounds, including that the remedy of rescission should have been decided by the trial judge and not submitted to the jury. The trial court agreed and granted the motion for a new trial. With respect to Manis & Johns, the court also reversed its prior dismissal of their cross-claim, and stated that they would be allowed to re-file it against the Allmans in the new trial.

As authorized by the trial court, Manis & Johns promptly re-filed their cross-claim against the Allmans. Moreover, as a consequence of being permitted to re-file their cross-claim, they filed a motion with this court to voluntarily dismiss their appeal of the original dismissal of their cross-claim. The motion was granted by this court on March 11, 2003, and the appeal was dismissed.

Not long after re-filing, Manis & Johns and the Moorheads each voluntarily dismissed their respective complaints, pursuant to Rule 41 of the Tennessee Rules of Civil Procedure, so that they could jointly file, as co-plaintiffs, an amended complaint against the Allmans. The respective orders of dismissal for each of the parties were entered June 24 and 27, 2003.

On June 23, 2004, the Moorheads, along with Manis & Johns (hereinafter the "co-plaintiffs"), jointly filed an amended complaint. The substance of the claims asserted by the four co-plaintiffs was the same as in the prior complaint and cross-claim: they jointly alleged misrepresentation and fraud in the inducement of the sales contracts by the Allmans as to all four plaintiffs, and breach of fiduciary duty by the Allmans as to Manis & Johns only. The breach of fiduciary duty claims concerned the Allmans' management of the income of the mobile home park as well as the Allmans' withholding of all but $15,000.00 of the $100,000.00 down payment made by the Moorheads, which was owed to Manis & Johns.

In their answer, the Allmans denied that the co-plaintiffs were entitled to any relief and asserted comparative fault as an affirmative defense. They later filed an amended answer arguing that the co-plaintiffs' claims were barred by the applicable statute of limitations.

Subsequently, both sides filed motions for summary judgment. The co-plaintiffs argued that, based on admissions made by the Allmans in pleadings, depositions and during the previous trial, there was no material dispute as to whether the Allmans had fraudulently misrepresented the profitability and quality of the mobile home to all four co-plaintiffs, which had induced each of the co-plaintiffs to purchase the mobile home park and property. In their opposing motion for summary judgment, the Allmans asserted that the applicable statutes of limitation barred the co-plaintiffs' claims and that the trial court erred in allowing Manis & Johns to re-file their cross-claim, which had been dismissed "with prejudice."

-4-

After several continuances and a lengthy delay, the cross motions were heard on January 28, 2009. The Chancellor denied the Allmans' motion in all respects and granted summary judgment to the co-plaintiffs. The trial court found it did not err in allowing Manis & Johns to re-file their previously dismissed cross-claim for two reasons: 1) the cross-claim was dismissed only because it was filed too close to the date of the first trial in May of 2002, which was no longer an issue; and 2) the order dismissing the cross-claim was an interlocutory order, not a final judgment, because the order did not resolve all the claims at issue in the action, and it did not comply with Tenn. R. Civ. Pro. 54.02. As for the statute of limitations defense, the court held the statute had been tolled by the Allmans' ongoing acts of deception, many of which were not revealed until testimony was given in the jury trial in May of 2002. The court stated:

> But for [the Allmans'] withholding information and hiding information and making material fraudulent misrepresentations to the parties as to the contracts and what was to occur concerning the return of Manis and Johns' money, the Plaintiffs Manis and Johns would have been in a better position to stop the closing with the Moorheads or to bring their own action.

With respect to the co-plaintiffs' motion for summary judgment, the trial court stated, "[I]t is clear that there were material misrepresentations made [by the Allmans] to Manis and Johns to induce them into the initial purchase. It is clear that the [Allmans] took on an agency relationship in 'managing' the mobile home park and fraudulently induced [the] Moorheads into purchasing the property." Specifically, the trial court found that the Allmans misrepresented the amount of maintenance the mobile homes required and failed to disclose that the mobile homes were outfitted with polybutylene piping, a type of piping which the Allmans were aware was subject to a major class-action lawsuit at the time of both sales. The court also found that the Allmans breached their fiduciary duty to Manis & Johns while managing the park for Manis & Johns by failing to provide any accounting for income and expenses, failing to report a higher offer to purchase the property, and by retaining the down payment paid by the Moorheads.

The trial court entered judgment in favor of the Moorheads and Manis & Johns on July 31, 2009, rescinding all of the contracts at issue and restoring title to the property in the Allmans. The trial court ordered the Allmans to return the Moorheads' $100,000.00 down payment with prejudgment interest over 11 years, for a total of $210,000.00. As for the claims of Manis & Johns, the trial court ordered the Allmans to refund their down payments of $147,075.00, with prejudgment interest over 12 years, for a total of $323,565.00.

The Allmans filed a timely appeal. During the pendency of the appeal, the Allmans reached a settlement agreement with the Moorheads. Therefore, this appeal only concerns

the issues between the Allmans and Manis & Johns.

## ISSUES

The Allmans do not challenge the trial court's finding that they fraudulently induced Manis & Johns into purchasing the mobile home park and adjoining property or that they breached their fiduciary duty to Manis & Johns while managing the park and facilitating the sale to the Moorheads. Because the Allmans do not challenge the trial court's finding that they acted fraudulently and breached their fiduciary duty, we need not consider the specific facts upon which these findings are based.

The three issues presented on appeal are that: 1) the claims asserted by Manis & Johns were barred by Tenn. Code Ann. § 28-3-105, the three-year statute of limitations for claims of damage to property, 2) the trial court erred by allowing Manis & Johns to re-file their cross-claim after the cross-claim was dismissed "with prejudice," and 3) the court erred by awarding damages to Manis & Johns without holding a hearing on the issue of comparative fault. The material facts pertaining to these issues are not in dispute and the issues present only questions of law. Therefore, the applicable standard of review is the *de novo* standard with no presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

I.

The Allmans contend the claims of Manis & Johns were time barred because the cross-claim was not filed until April 16, 2002, more than four years after the contracts between the Allmans and Manis & Johns were executed in January and February 1997.[2] We find this contention without merit for the following reasons.

Manis & Johns first asserted their claims against the Allmans in a cross-claim following the commencement of this action by the Moorheads. It has long been held in our jurisdiction that a cross-claim is "not barred by the applicable statute of limitations or any

---

[2]The Allmans also argue this first cross-claim failed to state a cause of action. We disagree. The cross-claim alleged that the Allmans "misrepresented the circumstances of the closing transaction," and that "the net effect of the misrepresentation . . . is that the Allmans have retained over two hundred thousand dollars ($200,000) in deposits from the Cross-claimants and the Plaintiffs." For relief, Manis & Johns requested rescission as well as a refund of "funds lost by them in the transaction with the Allmans." We note that Manis & Johns were acting *pro se* at this point in the proceedings; as such, they are entitled to a liberal construction of their pleadings, and we will give effect to the substance of their claims rather than the form. *See Discover Bank v. McCullough*, No. M2006-01272-COA-R3-CV, 2008 WL 245976, at *3-*4 (Tenn. Ct. App. Jan. 29, 2008). Accordingly, we find their first pleading was sufficient to assert a claim for fraudulent inducement, rescission of the contracts and damages.

statutory limitation of time, however characterized, if it was not barred at the time the claims asserted in the complaint were interposed." Tenn. Code Ann. § 28-1-114(a). Therefore, as Tenn. Code Ann. § 28-1-114(a) directs, the commencement of this action by the Moorheads on August 1, 2000 stopped the running of any statute of limitations for the filing of a cross-claim by Manis & Johns against the Allmans. With this in mind, we must determine the length of the limitations period for Manis & Johns' claims.

The statute of limitations for a given action will be determined "according to the gravamen of the complaint." *Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977). In this case, although Manis & Johns assert several different theories for recovery, the primary thrust of their claims is that the Allmans fraudulently misrepresented the condition and income potential of the mobile home park to induce them into purchasing the property in the first sale, and that the Allmans made further misrepresentations to induce Manis & Johns to sell a portion of the property to the Moorheads and to quitclaim the remaining property back to the Allmans. Our Supreme Court has held that "an economic loss sustained by a plaintiff from fraud or misrepresentation is an 'injury to personal property' requiring the application of the three-year statute of limitations." *Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1997). Additionally, this court has held that "fraud in the inducement of a contract sounds in tort and is therefore subject to § 28-3-105's three year limitation period." *Am. Fid. Fire Ins. v. Tucker*, 671 S.W.2d 837, 841 (Tenn. Ct. App. 1983). Therefore, the applicable statute of limitations is the three year limitation period stated in Tenn. Code Ann. § 28-3-105.

However, pursuant to the "discovery rule," the running of the statute of limitations will be tolled until the plaintiff knows, or reasonably should know, that an injury has been sustained. *See* Tenn. Code Ann. § 28-3-105; *Prescott v. Adams*, 627 S.W.2d 134, 138 (Tenn. Ct. App. 1981) (citing *Stone v. Hinds*, 541 S.W.2d 598, 599) (Tenn. Ct. App. 1976) ("[I]n a suit for property damages under T.C.A. § 28-3-105, the cause of action accrues at the time the injury occurs, or when it is discovered, or when in the exercise of reasonable care and diligence the injury should have been discovered."). Therefore, the three year limitation period did not begin to run until Manis & Johns were aware, or reasonably should have been aware, of their injuries.

The trial court found that the Allmans made material misrepresentations to Manis & Johns regarding the maintenance of the park prior to their purchase. Specifically, the court found that the Allmans were aware that the type of water piping used in the mobile homes

on Willow Tree Farm had been the subject of a billion-dollar class action lawsuit, *Cox v. Shell Oil*,[3] because the type of plastic used, polybutylene, was prone to frequent leaks.[4] Nevertheless, the Allmans represented that the rental units were properly equipped and low-maintenance. The trial court also found that the Allmans concealed much of the damage to the floors and walls of the rental units caused by the leaking pipes. When Manis & Johns were unable to realize the profit margins they expected based on the Allmans' representations, the Allmans claimed that Manis & Johns were simply not managing the park properly, and agreed to run the park for Manis & Johns until they could sell.

The Allmans continued to keep material matters from Manis & Johns when the Allmans were operating the park and facilitating the sale to the Moorheads, such that Manis & Johns remained unaware of the Allmans' fraud. During this time, the trial court found that the Allmans represented they were able to quickly bring the park up to full occupancy, and that they did not experience an unusual amount of water leaks. However, approximately five months later, at the time of the sale to the Moorheads, the Allmans claimed that Manis & Johns owed them over $80,000.00 plus the value of the 38-acre tract (which Manis & Johns were forced to quitclaim back to the Allmans as part of the sale to the Moorheads), for expenses the Allmans personally incurred while operating the park. Ms. Allman testified that she had an agreement with Manis & Johns that they would reimburse her and Mr. Allman for any expenses incurred while the Allmans ran the property. She also stated that she saw Mr. Johns several times a month. However, at no point during the time that the Allmans were running the park did Ms. Allman mention to Mr. Johns that she and Mr. Allman were spending well over $10,000.00 per month on the park, which is especially noteworthy in light of the trial court's finding that Ms. Allman represented to the Moorheads they could expect approximately $7,000.00 in *annual* maintenance costs.

The Allmans never provided any accounting or itemization for the $80,000.00 (which they later reduced to $65,000.00); nor did they ever provide an accounting for the rent payments they accepted on behalf of Manis & Johns. In testimony, Ms. Allman claimed that a portion of the $80,000.00 was owed to the Allmans from the mortgage on the 38-acre tract, but she could not explain why Manis & Johns were required to pay the mortgage off on that property *and* quitclaim it back to the Allmans.

---

[3] *Cox v. Shell Oil Co.*, No, 18,844 (Tenn. Ch. Ct. Obion County 1995) and related cases *Beeman v. Shell Oil Co.*, No. 93-047363 (Tex. Dist. Ct. Harris Court Sept. 1993); *Spencer v. Shell Oil Co.*, No-CV-94-074 (Ala. Cir. Ct. Greene County Nov. 1994).

[4] Polybutylene has a propensity to degrade when it comes in contact with chlorinated water, causing leaks.

The trial court held that the initial misrepresentations of the profitability of the mobile home park, "along with all the other matters concerning the excessive repairs that were attributable to polybutylene pipe, coupled with the total lack of accounting and explanation in this matter lead to the inescapable conclusion that the statute of limitations was tolled" until depositions were taken for the first trial in March 2001.

The Allmans contend that the trial court erred by concluding that Manis & Johns should not reasonably have been aware of their injuries until March 2001. However, they do not contend that Manis & Johns should have been aware of the injury at the time of the closing of the sale to Manis & Johns on March 1, 1997, or that the problems with the property, which had been concealed by the Allmans, should reasonably have been discovered by Manis & Johns while Manis & Johns managed the property themselves, or while the Allmans managed the property as the agents of Manis & Johns. The Allmans assert that the earliest Manis & Johns should reasonably have been aware they had been defrauded was at the time of the sale to the Moorheads, on April 8, 1998, at which time they discovered the Allmans' intention to retain the bulk of the $100,000.00 down payment made by the Moorheads.

It is not necessary for us to determine the date the discovery rule ceased to toll the statute of limitations for Manis & Johns' claims, because, even if we consider April 8, 1998, the date most favorable to the Allmans, as the date Manis & Johns should reasonably have discovered their injuries, and apply the foregoing principles of law, we find that the claims asserted by Manis & Johns are not barred by the statute of limitations. If the limitations period did not begin to run until April 8, 1998 (due to the discovery rule), and it stopped running with the filing of the Moorhead complaint on August 1, 2000 (due to Tenn. Code Ann. § 28-1-114(a)), then it is clear that Manis & Johns' cross-claim was filed within the three-year limitations period set forth in Tenn. Code Ann. § 28-3-105, with eight months to spare.[5] Therefore, we affirm the trial court on this issue.

II.

For their next issue, the Allmans contend the trial court did not have jurisdiction to allow Manis & Johns to re-file their cross-claim after the cross-claim had been dismissed

---

[5]The amended pleadings filed by Manis & Johns after the Allmans were granted a new trial "relate back to the date of the original pleading," because the claims "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" Tenn. R. Civ. Pro. 15.03, and were filed with leave of court. Tenn. R. Civ. Pro. 15.01. Furthermore, as stated, Manis & Johns' claims were properly re-filed within the one year savings statute, Tenn. Code Ann. § 28-1-105, following their voluntary dismissal. *See* Tenn. Code Ann. § 28-1-114(b).

"with prejudice" prior to the jury trial.

The order dismissing the cross-claim by Manis & Johns states in pertinent part:

[T]he Court finds that the Cross-Claim of Defendants Clyde D. Manis and Gregory D. Johns was untimely filed, to wit: It was filed on April 16, 2002 for a trial set for May 1, 2002, which the Court finds is too close to trial and works an undue hardship upon Defendants Joy Vail Allman and Larry Allman. Wherefore, it is Ordered that said Cross-Claim be, and it hereby is, dismissed with prejudice.

The order dismissing the cross-claim asserted by Manis & Johns did not adjudicate all claims asserted by all parties; particularly it did not adjudicate the Moorheads' claims. With regard to dismissals of fewer than all the claims in an given action, Rule 54.02 of the Tennessee Rules of Civil Procedure provides:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court . . . may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. *In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties.*

Tenn. R. Civ. Pro. 54.02 (emphasis added).

The order dismissing the cross-claim by Manis & Johns did not adjudicate the Moorheads' claims and it did not contain an "express determination that there is no just reason for delay" or "an express direction for the entry of judgment." Therefore, as Rule 54.02 expressly provides, the order of dismissal did not "terminate the action as to *any* of the claims or parties." *Id.* (emphasis added). Accordingly, it was an interlocutory order that was "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties." *See* Tenn. R. Civ. P. 54.02; s*ee also In re Estate of Henderson*, 121 S.W.3d 643, 645-46 (Tenn. 2003). For the foregoing reasons, we find the trial court retained jurisdiction to revise the order dismissing the cross-claim.

Two weeks after the entry of the order dismissing the cross-claim of Manis & Johns, the case was tried by a jury and the jury returned a verdict in favor of the Moorheads against the Allmans. After the judgment was entered and before it became a final judgment, the Allmans moved for and were granted a new trial pursuant to Tenn. R. Civ. P. 59.07. The order granting a new trial states: "the Court finds that it should grant a new trial as to all parties and all issues. As a result, it also allowed the cross-claim by Defendants Manis and Johns to be re-filed without prejudice." Within four days of the entry of this order, Manis & Johns re-filed their cross-claim.[6] Thus, Manis & Johns timely re-filed their cross-claim when authorized to do so by the trial court.[7]

For the above reasons, we find the trial court did not err by allowing Manis & Johns to re-file their cross-claim after their cross-claim had been dismissed pursuant to an interlocutory order, the fact it had been dismissed "with prejudice" notwithstanding. Therefore, we affirm the trial court's reinstatement of the cross-claim asserted by Manis & Johns against the Allmans.

III.

For their last issue, the Allmans assert that the trial court erred by awarding damages to Manis & Johns without holding a hearing to determine the issue of comparative fault. They do not argue that the remedy of rescission itself was inappropriate; they only dispute the amount of damages. We find this issue without merit.

As this court has previously stated, "[r]escission involves the avoidance or setting aside of a transaction. It is an equitable remedy, available where the contract was induced by fraud or duress. . . . It is intended to return the parties to the positions they were in before the transaction took place." *Williamson v. Upchurch*, 768 S.W.2d 265, 271 (Tenn. Ct. App. 1988) (internal citations omitted). Typically, "a purchaser who has been the victim of either fraud or mistake, upon rescission, is allowed to recover the consideration or purchase price he paid for the property." *Isaacs v. Bokor*, 566 S.W.2d 532, 538 (Tenn. 1978).

---

[6]The order permitting Manis & Johns to re-file their cross-claim was entered on June 19, 2002; the cross-claim was re-filed on June 23, 2002.

[7]Thereafter, Manis & Johns and the Moorheads voluntarily dismissed their respective claims against the Allmans pursuant to Tenn. R. Civ. P. 41.01 with the intent to file a joint complaint against the Allmans. Pursuant to the Savings Statute, within one year of the voluntarily dismissing their respective claims, Manis & Johns and the Moorheads re-filed their respective claims in a joint complaint against the Allmans. *See* Tenn. Code Ann. § 28-1-105; *see also* Tenn. Code Ann. § 28-1-114(b) (permitting cross-claims to be re-filed following a voluntary nonsuit).

-11-

The trial court specifically limited the damages to "all of the down payment monies paid." This included $147,075.00 for the down payments made by Manis & Johns plus pre-judgment interest for twelve years, as authorized by Tenn. Code Ann. § 47-14-123. *See id.* ("Prejudgment interest . . . may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent per annum."). The trial court awarded pre-judgment interest at the statutory maximum rate of 10% ($14,707.50) per year, for a total of $323,565.00.

We have determined it was unnecessary for the trial court to hold a hearing on the amount of monetary damages Manis & Johns were entitled to recover. The amount of the down payments paid by Manis & Johns is stated in the contracts for sale and neither party disputed that those were the amounts actually paid. The trial court also restored title to the property in the Allmans. The return of the property to the Allmans and the refund of the down payments to Manis & Johns, with interest as authorized by Tenn. Code Ann. § 47-14-123, restored the parties to the positions they were in before the contracts were executed. *See Upchurch*, 768 S.W.2d at 271. We therefore affirm the trial court's decision to award Manis & Johns a refund of their down payments and restore title to the property and mobile home park in the Allmans.

IV.

For their part, Manis & Johns contend they are entitled to attorney's fees pursuant to Tenn. Code Ann. § 27-1-122, for being "forced to file a Motion to Correct the Record." This contention is based on the assertion that, when designating the record, the Allmans failed to include the first appeal filed by Manis & Johns following the dismissal of their cross-claim.

Pursuant to Tenn. Code Ann. § 27-1-122, if we determine that an appeal is frivolous or that the appeal was taken solely for delay, we may award damages against the appellant, which may include "costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal." An appeal may be deemed frivolous if we are unable to address the issues due to an inadequate record. *Williams v. Williams*, 286 S.W.2d 290, 297 (Tenn. Ct. App. 2008).

As Manis & Johns correctly assert, the Allmans, as the appellants, had the duty to prepare an accurate and fair record; however, we find that the oversight at issue, especially in this procedurally complex case, is not sufficient for this court to deem the Allmans' appeal frivolous or devoid of merit. *Cf. Id.* at 297-98. Thus, we respectfully deny Manis & Johns' request for attorney's fees.

## CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellants, Joy Vail Allman and Larry Allman.

_____
FRANK G. CLEMENT, JR., JUDGE